UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANNIE LUDWIG,



                                    Plaintiff,

                                                                    DECISION AND ORDER

                                                                    05-CV-6267L


                    v.

ROCHESTER PSYCHIATRIC CENTER,
NEW YORK STATE OFFICE OF MENTAL HEALTH,


                                    Defendants.

_____


        Plaintiff Annie Ludwig ("Ludwig") brings this action alleging unlawful retaliation in

employment against her former employer, Rochester Psychiatric Center ("RPC"), and its operator,

the New York State Office of Mental Health (collectively, "defendants"), pursuant to Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the New York Human Rights Law, N.Y.

Exec. Law §§290 et seq. ("NYHRL").  Defendants now move for summary judgment.  For the

reasons that follow, defendants' motion is granted and the amended complaint is dismissed.

        Ludwig was hired by RPC on August 19, 2002 as a Psychiatric Nurse II, assigned to the

Adult Services Unit (ASU).  In September 2002, RPC advised Ludwig that if she failed to improve

her professional knowledge, judgment, supervision and attendance, she would "jeopardize [her]

continued employment" with RPC.  In December 2003, Ludwig was voluntarily reassigned from

ASU to RPC's Regional Forensic Unit (RFU).  The RFU is a secure psychiatric facility treating patients with dangerous mental illnesses.

In March 2004, Ludwig alleges that a co-worker, nurse Susan Myers ("Myers"), began making comments to Ludwig, as well as to other employees, concerning Ludwig's "attractiveness, about the guys staring at [Ludwig], wanting to be around [Ludwig]."  Ludwig testified that Myers also told her that she had overheard male coworkers express interest in having an affair, and among the staff, preferred Ludwig for that purpose because she was younger than many of the other female staff members.  Ludwig reported Myers' comments to her supervisor, Diane Reed ("Reed"), who suggested that Ludwig confront Myers directly.

On April 21, 2004, Ludwig visited the RPC personnel department and asked for information about sexual harassment.  She told Assistant Personnel Director Georgianna Johnson that she felt that Myers' comments to her concerning her physical appearance and sexual attractiveness to male coworkers were inappropriate.  Ludwig also reported that she believed Myers fabricated information in patient charts.

On or about April 23, 2004, Reed met with Ludwig and Myers.  She advised Myers that RPC had "zero tolerance" for any comments concerning Ludwig's youth, attractiveness, or effect on the male staff.

The following day, Ludwig reported to RPC that Myers had been insubordinate to the Charge Nurse on the floor. On August 16, 2004, Myers reported to RPC that Ludwig had made a medication error and a patient rounding (head count) error.  Ludwig admitted to both policy infractions, and a disciplinary write-up for each was placed in her personnel file.

Conflicts between Ludwig and Myers continued on the ward, and included arguments in front of patients.  RPC determined that their ongoing feud had become a threat to the safety of staff and patients in the RFU, and decided to reassign Ludwig, the least senior employee, to another unit. Effective August 19, 2004, Ludwig was reassigned to ASU.

On August 31, 2004, Ludwig reported that two weeks earlier, on August 15, 2004 – the same day Myers had reported that Ludwig made medication and rounding errors – she had observed Myers make a rounding error.

On October 6, 2004, Ludwig filed a formal charge of discrimination based on age and sex with RPC, alleging that Myers' comments concerning her physical appearance and her male coworkers' reaction to it were discriminatory, and requesting that the "[i]ndividuals involved be held accountible [sic] Return to Forensic Unit, Emotional Distress [sic] Lost wages (hazardous pay) [sic] Attorney fees."

Following its investigation into Ludwig's internal discrimination complaint, RPC eventually made an undated report of its findings.  After interviewing Ludwig and ten witnesses and collecting statements from a number of others, RPC concluded that although Myers' comments *were* a violation of RPC's sexual harassment policy, Myers had been counseled that there would be "zero tolerance" for such comments, upon which the comments ceased.  Nonetheless, it was recommended that Myers be mandated to attend the next Sexual Harassment Prevention training program at RPC. With respect to Ludwig's objection to being transferred out of RFU and back to ASU, RPC concluded that Ludwig's medication errors and failure to follow rounding procedures justified her

transfer, in order to provide her with closer supervision, and noted that Myers played no role and had

no input in the transfer decision.

On November 24, 2004, Ludwig filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC"), alleging that she had been subjected to unlawful retaliation for

complaining about Myers.

On December 14, 2004, RPC issued Ludwig a disciplinary write-up for delaying to report

Myers' rounding error in August 2004. The same day, Ludwig filed a grievance with RPC, alleging

that the disciplinary write-ups and transfer were unfair, because "Myers has not complied with same

[sic] policies and procedures with which I have been counseled . . . I think to reassign me based on

the need of closer supervision is not a reflection of my job performance, but [my RFU supervisor's],

since she is not providing the supervision that she says I supposedly need." Ludwig's requested

remedies included reinstatement to the RFU, retroactive reinstatement of hazardous duty pay,

removal of negative statements from her 2004 evaluation, and removal of Susan Myers from RFU.[1]

Upon receipt of a "no cause" finding and Right-to-Sue letter from the EEOC, Ludwig filed

the instant action on May 6, 2005, alleging that RPC retaliated against her for complaining about

sexual harassment in the workplace.

It seems clear that much of what instigated and propelled the claims here were the result of

a feud between plaintiff and another female employee. Disciplinary findings were made against both

employees for various infractions. As discussed, *infra*, there is no basis for a finding of employment

discrimination, and the complaint must be dismissed.

---

[1] It is unclear what action, if any, RPC took in response to Ludwig's grievance.

**DISCUSSION**

### I.  Summary Judgment in Discrimination Cases

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a common component of discrimination actions, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion).  *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

Ludwig's claims of retaliation pursuant to Title VII and the NYHRL are subject to the familiar burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*,  411 U.S. 792 (1973).  On a motion for summary judgment, the plaintiff must first establish a *prima facie* case of retaliation by showing: (1) her participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.  If she does so, the burden shifts to the defendant to

establish a legitimate, non-retaliatory basis for the complained-of action. If the defendant does so,

the burden returns to plaintiff, who must show that the legitimate, non-retaliatory reason articulated

by the defendant is a mere "pretext," and that retaliation was more likely than not the reason for the

complained-of action.  *See Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000); *Gallagher v.*

*Delaney*, 139 F.3d 338, 349 (2d Cir. 1998).

While granting Ludwig the liberal interpretation and favorable inferences due to her as a

nonmovant, I find that Ludwig has nonetheless failed to establish a *prima facie* case of retaliation,

and/or to rebut RPC's legitimate, nondiscriminatory reasons for disciplining and transferring her.

## II.      Ludwig's Retaliation Claim

In asserting engagement in a "protected activity" for purposes of Title VII, a plaintiff must

"have had a good faith, reasonable belief that [s]he was opposing an employment practice made

unlawful by Title VII." *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001). *See also*

*Guerrero v. Lowe's Home Ctrs., Inc.*, 462 F. Supp. 2d 399, 409 (W.D.N.Y. 2006), *aff'd*, 2007 U.S.

App. LEXIS 26604 (2d Cir. 2007).  Thus, a retaliation claim may lie regardless of whether any

underlying discrimination claim actually amounts to a Title VII violation.  *See Guerrero*, 462 F.

Supp. 2d 399 at 408-409.  Ludwig alleges that she reasonably believed her complaints concerning

Myers' comments, which described observations by other staff members concerning Ludwig's youth,

physical appearance and sexual desirability, constituted a complaint of sexual harassment for Title

VII purposes.  While RPC disputes the nature of Ludwig's claim, the Court notes that RPC identified

and investigated Ludwig's complaints as a sexual harassment matter, ultimately concluding that

Myers *had* violated RPC's zero-tolerance anti-harassment policy.  Because Myers' comments

repeatedly referenced Ludwig's sexual attractiveness and/or sexual availability to other staff members and moreover were recognized by RPC as implicating sexual harassment, I find that Ludwig had a "good faith, reasonable belief" that her complaint concerned sexual harassment. *McMenemy*, 241 F.3d 279 at 285.

Next, Ludwig must show that she was subjected to an adverse employment action; that is, action "that a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405, 2415 (2006). The materiality of an adverse employment action "depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Kessler v. Westchester County Dep't of Social Servs.*, 2006 U.S. App. LEXIS 21530 at *26-*28 (2d Cir. 2006).

Ludwig alleges that in retaliation for her complaint concerning Myers, RPC: (1) failed to correct Myers' behavior; (2) permitted plaintiff's supervisor to place disciplinary write-ups in her personnel file; and (3) reassigned Ludwig from RFU to ASU, which deprived Ludwig of the hazardous duty pay, favorable hours and other incentives that she had enjoyed as an RFU employee.

With regard to RPC's treatment of Myers, Ludwig does not articulate the ways in which she believes that RPC's response to Myers' conduct was deficient. However, it is undisputed that immediately following Ludwig's initial complaint to RPC, Myers was counseled by Human Resources concerning its "zero tolerance" anti-harassment policy, and that thereafter, there is no evidence, or even an allegation, that Myers continued to make inappropriate comments.

Accordingly, I conclude that plaintiff has failed to establish a *prima facie* case of retaliation with respect to RPC's response to Myers' conduct.

Ludwig also alleges that the disciplinary write-ups that were placed in her personnel file and her transfer out of RFU constituted adverse employment actions.  Ludwig does not allege, nor is there any evidence, that the counseling write-ups were accompanied by any adverse changes in the terms and conditions of Ludwig's employment.  *See generally Pellei v. Int'l Planned Parenthood Fed'n / W. Hemisphere Region, Inc.*, 1999 U.S. Dist. LEXIS 15338 at *33 (S.D.N.Y. 1999) (negative performance evaluations, without accompanying adverse consequences, are not adverse employment actions)**.**  In fact, it is undisputed that Ludwig was treated more favorably by RPC than some other employees who received disciplinary write-ups for similar infractions: of the four RPC employees who have been written up for rounding errors, one received a letter of reprimand and a two-week suspension, and one was terminated, while Ludwig merely received a personnel file-write up and counseling.

Concerning the transfer, it is well settled that:

> [t]o be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.  A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or benefits, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.

*Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).

For Ludwig, the reassignment resulted in her performing the same responsibilities on the same shift for the same compensation. Although Ludwig's shift schedule was later changed by a few minutes, and her "pass days" and weekends off were adjusted to different days of the week and/or

month than those she had been assigned in the RFU, Ludwig admits that there was no change with respect to the number of hours she worked, or the number of pass days or weekends off that she received.  I find that the minor schedule changes that Ludwig describes would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination," and thus do not constitute an adverse employment action.  *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405 at 2415 (2006).  Furthermore, Ludwig testified that she didn't know the amount of hazardous duty pay that she received at RFU, and offers no evidence that would clarify that point, or would otherwise permit the Court, or a reasonable jury, to find that the loss of such pay constituted "a material loss of benefits."  *Galabya*, 202 F.3d 636 at 640.

Accordingly, Ludwig has failed to demonstrate an adverse employment action sufficient to form a *prima facie* case of retaliation.

Moreover, assuming *arguendo* that Ludwig did experience an adverse employment action and perfected her *prima facie* case by showing causation based upon the temporal proximity between her complaints and the alleged adverse employment actions, she cannot rebut RPC's legitimate, nondiscriminatory reasons for disciplining and/or transferring her: Ludwig's failures to follow RFU policy and her ongoing feud with Myers.

In attempting to show that RPC's explanations for Ludwig's transfer and discipline are pretextual, Ludwig notes initially that RPC has offered shifting explanations for her transfer, including Ludwig's own creation of a hostile work environment by failing to act professionally in the face of interpersonal difficulties with Myers, unsatisfactory performance, interpersonal difficulties with a more senior employee (Myers), seniority in general, and Ludwig's "polarizing"

of the staff.  While it is true that an employer's inconsistent explanations for an adverse employment action may be suggestive of pretext, *see Giannone v. Deutsche Bank Sec., Inc.*, 392 F. Supp. 2d 576, 588 (S.D.N.Y. 2005), I find that RPC's explanations for Ludwig's transfer are simply reiterations of the same legitimate, nondiscriminatory reason: Ludwig was transferred because her interpersonal difficulties with Myers had escalated to the point that they were interfering with Ludwig's ability to perform her duties, and Ludwig was the least senior among the two women.  *See generally Ford v. Consol. Edison Co. of N.Y., Inc.*, 2006 U.S. Dist. LEXIS 8599 at \*45-\*46 (S.D.N.Y. 2006) (employer's explanations for adverse employment action are not inconsistent, and therefore not evidence of pretext, where the various statements of the legitimate, nondiscriminatory reason do not contradict one another, and merely provide varying amounts of explanation or detail), *aff'd*,2007 U.S. App. LEXIS 12313 (2d Cir. N.Y. 2007).

Ludwig also points to the close proximity between her first complaint of sexual harassment in March 2004, and the disciplinary write-ups which followed in April 2004 and August 2004, as well as between her EEOC charge and final disciplinary write-up.  However, temporal proximity alone is insufficient to establish pretext, *see Simpson v. New York State Dep't of Civil Servs.*, 166 Fed. Appx. 500, 502 (2d Cir. 2006), and Ludwig has produced no other evidence that RPC's treatment of her was retaliatory.  Ludwig admitted to each of the infractions for which she was disciplined, and offers no evidence that other staff members who committed similar policy violations were treated differently.  Again, it is undisputed that Ludwig was disciplined more gently for her admitted policy violations than other staff members: while Ludwig was merely written up and

counseled, some other employees with rounding errors were issues letters of reprimand, suspended and even terminated.

Nor does the mere fact of Ludwig's transfer imply retaliation.  As noted, *supra*, the transfer resulted in no materially adverse change in Ludwig's terms and conditions of employment, and it is undisputed that employee reassignment is a tactic that RPC has employed on multiple occasions in order to resolve interpersonal conflicts between employees.  In fact, Myers herself was reassigned from the RFU to another unit in February 2005 for that reason.

Thus, even if Ludwig had managed to make out a *prima facie* case of discrimination, she has failed to set forth evidence – beyond temporal proximity – that RPC's legitimate, nondiscriminatory reasons for her disciplinary write-ups and transfer are pretextual, and accordingly, her retaliation claims must fail.

### Conclusion

For the foregoing reasons, defendants' motion for summary judgment (Dkt. #19) is granted and plaintiff's amended complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        April 30, 2008.